EUGENE KELLY

v.

JAMES B. BOYLAN and others.

The complainant bought, at a public sale, and under a power of sale in a mortgage given by a horse railroad company, all their real estate, personal property, franchises, rights and privileges; he sold everything so bought to one Boylan, December 23d, 1874, taking, as part of the purchase-money, a mortgage thereon from Boylan and his wife. This mortgage was filed, as a chattel mortgage, on February 5th, 1875, but was never refiled. In April, 1876, an act of the legislature was passed, providing that a mortgage of chattels &c. of any railroad or canal company should be valid without being filed as a chattel mortgage.—*Held,*

(1) That the act applied to the mortgage in question.

(2) That it applied to mortgages executed before its passage.

(3) That such mortgage was a lien on the chattels described therein, prior to judgments recovered after it was given, either against the mortgagor or a new horse railroad company, created after the mortgage was given, and claiming the disputed chattels by a devolution of title under Boylan, the mortgagor.

———

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. J. W. Taylor,* for complainant

*Mr. C. Parker,* for defendants James B. Boylan, jun., and James McKenny.

THE CHANCELLOR.

The bill is filed to foreclose a mortgage for $42,900 and and interest, given to the complainant by James B. Boylan, sen., and his wife, December 23d, 1874, upon (according to its terms), all and singular the grant or license, rights and privileges conferred on the Newark and South Orange Horse Car Railroad Company by legislative authority, and

the franchises, privileges, benefits, rights and interests connected therewith and belonging to the mortgagor, James B. Boylan, and formerly to that company; and, also, the main line of the railroad of that company, with all its fixtures and equipments, horses, cars, harness, and all other rolling stock and personal property, together with the lands, tenements, hereditaments, rights of way and easements then acquired or appropriated by that company for its purposes, and also the leases, contracts, rights, privileges and advantages then secured, possessed or acquired by the mortgagor, and formerly owned or possessed by the company, for the purpose of constructing, repairing, renewing and operating the company's railroad and conducting its railroad business. The mortgage was given to secure part of the purchase-money of the mortgaged premises, on a sale and conveyance thereof at that date, to the mortgagor by the complainant, who had become the owner of the property and franchises by purchase thereof, at a sale by the trustees under a mortgage, containing power of sale, given by the company.

The controversy is as to the rolling stock mentioned in the mortgage, the real estate having been sold under a decree of foreclosure and sale in this suit. The complainant's lien upon the personal property in question is contested by James B. Boylan, jun. (son of the mortgagor), and James McKenny, both claiming title to the property under sale on executions at law. The former claims under executions on judgments against the mortgagor, and the latter under executions or judgments against the Newark and Orange Horse Car Railroad Company, a corporation which, the defendant McKenny alleges, was created subsequently to the giving of the complainant's mortgage, and which, he insists, obtained, on its creation, *ipso facto*, under the laws of this state, legal title to the property in dispute, by devolution from James B. Boylan (the mortgagor), then the owner thereof. The judgments under which these claimants assert title, were all recovered after the 1st of May, 1876.

The complainant's mortgage was filed as a mortgage of chattels, in the register's office of Essex county, where the mortgagor resided, February 5th, 1875, but was never refiled. ·The answering defendants, Boylan, jun., and McKenny, insist that, because it was never refiled, it was and is void as to the chattels, as against the judgments under which they respectively claim title.

The bill states that, under an execution against the alleged new company, issued on a judgment which the persons composing the firm of Wilkinson, Gaddis & Co. had obtained against that corporation (it was recovered June 10th, 1876, for $3,103.07), they caused a levy to be made upon, and a sale to themselves to be made of, the horses, cars and other rolling stock and property appurtenant to the railroad and embraced in the complainant's mortgage, and that they have made a pretended transfer thereof to McKenny; but the complainant charges and insists that that property was not subject to sale as the property of the company, and that the judgment, execution, levy, sale and transfer were devised and set on foot and carried out by Boylan, the mortgagor, in collusion with Wilkinson, Gaddis & Co. and McKenny, for the purpose of defrauding him, and impairing and destroying the security of his mortgage; and that the purchase by James B. Boylan, jun., was with the like design and for the like purpose.

The complainant insists that his mortgage is within the spirit, and that he is, therefore, entitled to the benefit, of the act of April 21st, 1876, entitled a further supplement to the act entitled "An act respecting railroads and canals" (*Rev. p. 924 § 4*), which provides that nothing in any of the laws of this state shall be held to require the filing of record in the clerk's (or register's) office of any county, of any mortgage given by any railroad or canal corporation conveying the franchises thereof, whereby any chattels, then or thereafter to be possessed and acquired by such corporation, shall purport to be mortgaged, provided that such mortgage shall be duly lodged for registry, according to the laws regulating

the conveyance of real estate. The mortgage in suit was recorded February 5th, 1875.

The complainant, when he purchased the mortgaged franchises and personal property at the trustees' sale, became, by the provisions of the act "concerning the sale of railroads, canals, turnpikes, bridges and plank-roads" (*Rev. p. 945*), a body corporate and politic, and was vested with all the rights, title, interests, property, possession, claim and demand, in law and equity, of, in and to the railroad, with all its appurtenances, with all the rights, powers, immunities, privileges and franchises of the company; and, by the terms of the law, he was required, within thirty days after the conveyance to him was .delivered, to organize a new corporation for the exercise of the franchises and use of the property. He himself took no such action, but sold the property and franchises forthwith, after his purchase, to James B. Boylan, sen., and received from him the mortgage now in suit to secure the purchase-money of the conveyance. He thus transferred to Boylan his property and rights, including the franchises, and including, also, the right to organize a new company.

Had the complainant, on acquiring title to the property and franchises, given a mortgage thereon, it would have been within the letter as well as the spirit of the act of 1876. His grantee is, under the circumstances, to be regarded as standing in his place and clothed with his rights; and his grantee's mortgage to him of the franchises and chattels in connection therewith, is in like manner within the act. That act is remedial. The mischief which it was intended to prevent was, the necessity which then existed of dealing with mortgages of chattels used in connection with the operation of railroad or canal franchises as being within the act concerning chattel mortgages, in order to protect the lien on the chattels under them. The legislature, in effect, declared, by the act of 1876, that where chattels were mortgaged in connection with railroad or canal franchises, the mortgage should not be subject to the act

Kelly *v.* Boylan.

concerning chattel mortgages, but only to that concerning mortgages of real estate, and this, on the ground that the chattels were necessary to the enjoyment of the franchises. The mortgage in suit is clearly within the spirit, object and meaning of the act; and a thing which is within the object, spirit and meaning of an act, is as much within the act as if it were within the letter. *Potter's Dwarris 179.*

It is urged in this case, however, that the act of 1876 cannot be applied to mortgages given before its passage. By its terms it does not exclude mortgages given before that time. It has been held that it does not apply to the case of a mortgage given before the passage of the act, as against a levy under an execution made prior to the passage of the act, but it was so held on the ground that, by the levy, the plaintiff in the execution had a vested right which was not divested by the act of 1876. *Williamson* v. *N. J. Southern R. R. Co., 2 Stew. Eq. 311.*

But except where a lien or title was acquired by an encumbrancer or purchaser before the passage of the act, the act applies to a mortgage given before the act was passed, and the mortgagee is entitled to the benefit of the act accordingly. In this case, none of the levies under which James B. Boylan, jun., and McKenny claim title, were made until after the passage of that act. The judgments were none of them recovered until after that time.

The complainant's mortgage will be held valid as against the titles of Boylan, jun., and McKenny, except as to ten of the horses. There is satisfactory proof that ten of the horses, claimed by the complainant under his mortgage, were purchased after the giving of his mortgage. He has no lien on them.

The view I have taken of the legal aspect of the case renders it unnecessary for me to enter upon the question of fraud, which was discussed at the hearing.